UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS THARP
        Plaintiff,                            CIVIL ACTION NO.09-12817

    v.                                       DISTRICT JUDGE GERALD E. ROSEN

COMMISSIONER OF                    MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of the defendant's decision denying plaintiff's 2006 application for social security disability benefits and supplemental security income (SSI). Plaintiff initially filed for disability benefits in April, 2001 and in 2003, plaintiff was awarded a closed period of disability benefits beginning August 3, 2000 and ending in July 2002 when plaintiff returned to work. Plaintiff alleged disability based on myofascial pain syndrome. Plaintiff then filed the instant application, alleging an onset date of October 1, 2003 (later amended to July 1, 2007) based on Reflex Sympathetic Dystrophy (RSD) (Tr. 113). The ALJ found that plaintiff had back pain due to degenerative and discogenic back disorders and was unable to perform his past relevant work, but that the impairment did not meet the Listings and plaintiff retained the residual functional capacity (RFC) to perform a limited range of sedentary work. Thus, he was not entitled to benefits. Plaintiff contends that this finding is not supported by substantial evidence, and he raises two specific issues: (1) that the ALJ's determination of the

RFC was wrong and thus the hypothetical question to the vocational expert failed to accurately portray plaintiff's mental limitations, and (2) that the ALJ failed to properly evaluate the medical opinion evidence. Defendant contends otherwise. For the reasons discussed in this report, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

At the time of the ALJ's decision, plaintiff was 36 years old (a younger individual). See, 20 CFR 404.1563(c). He was recently married, had no children, and last worked in October, 2003 as a technical director at a television station for one year and previously as a computer technician for the State of Michigan for eight years. He also worked part time designing ads for his mother's business. He has an associate's degree in marketing. (Tr. 8)

**Standard of Review**

The Commissioner's final decision is subject to judicial review under 42 U.S.C. § 405(g), which provides, *inter alia:* "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). A court " 'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.' " *Colvin v. Barnhart,* 475 F.3d 727, 729-30 (6th Cir.2007) (quoting *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997)). If the Commissioner's decision is supported by

substantial evidence, the court must defer to that decision " 'even if there is substantial evidence in the record that would have supported an opposite conclusion.' " *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004) (quoting *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir.2003)).

Disability is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). An individual will only be determined to b under a disability if his impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id.* § 1382c(a)(3)(B).

The ALJ, in determining whether a claimant is disabled, conducts a five-step analysis:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner*, 127 F.3d 525, 529 (citing 20 C.F.R. § 404.1520).

Under the five-step inquiry, the claimant bears the burden of proof through the first four steps, and the Commissioner bears the burden of proof at the final step. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003). To prevail at step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity," *id.,* taking into account factors such as age, education, and skills. *Walters,* 127 F.3d at 529.

The issue before the court is whether to affirm the Commissioner's determination. In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

**Background**

At the hearing, plaintiff testified that he takes Percocet, Depakote, and Prozac, as well as Imitrex as needed for his migraines. (Tr. 10) He takes Percocet five times a day (325 mg). Id. His doctor is ready to increase his medication to Oxycontin because the Percocet is no longer effective. (Tr. 11) Plaintiff's primary diagnosis is reflex sympathetic dystrophy (RSD). (Tr. 11) He states that Dr. Shah, a neurosurgeon made that diagnosis. Before that, plaintiff had been diagnosed at the Mayo Clinic with chronic pain syndrome in 2002.[1] His symptoms include chronic pain, loss of sleep, difficulty sitting for a long time, and according to plaintiff, Dr. Shah thinks it is related to the nerve fiber stretching. (Tr. 15) Plaintiff has been treated with neurostimulators as well as pain medication. Id. He also tried a TENS unit but that was too localized. He restricts his activities because of the pain and spends the majority of his time lying on a couch or sitting in a recliner. (Tr. 16) He watches TV, listens to audio books, but can't read because his hands hurt from holding a book. (TR 17) He has difficulty wearing clothing because he has very sensitive skin. (Tr. 17) At night he uses a CPAP machine. He used to have health insurance but no longer does. (Tr. 19)

---

[1] According to the Mayo Clinic website, www.mayoclinic.com, chronic pain syndrome, i.e. complex regional pain syndrome (CRPS) is an uncommon, chronic condition that usually affects the arm or leg. Rarely, complex regional pain syndrome can affect other parts of the body. Complex regional pain syndrome is marked by intense burning or aching pain. A person may also experience swelling, skin discoloration, altered temperature, abnormal sweating and hypersensitivity in the affected area. The NIH notes that Reflex Sympathetic Dystrophy and Causalgia are synonyms for CRPS. www.ninds.nih.gov.

Michelle Peters testified as a vocational expert. (Tr. 21) She indicated that plaintiff's past work as a technical director for a TV station was skilled work at the exertional level of medium to heavy work. (Tr. 22) His past work as an information systems support technician would be skilled and light, occasionally heavy. Plaintiff also has past work in sales and stocking which would be semiskilled and heavy. (Tr. 22-23) If a person such as plaintiff (younger individual with more than a high school education), same past work, has a residual capacity for light work, no climbing of ladders, ropes, and scaffolds, no more than occasional climbing of stairs and ramps, no more than occasional stooping, kneeling, crouching, and crawling, such a person could not perform any of plaintiff's past work. There would be no transferable skills either. (Tr. 23) Such a person could perform office work and unskilled sedentary positions. These would include 400 positions in the Flint area and 450 information clerk jobs, and 175 assembly type jobs. (Tr. 24) These jobs would not generally allow for unscheduled work breaks of 20 minutes or so at least three times a week. (Tr. 24) In addition, absences could generally not exceed one to two days per month. (Tr. 25) Sedentary positions such as these generally require full use of the hands, with occasional handling and fingering. (Tr. 25)

**Opinion of the ALJ**

In this case, the ALJ determined that claimant carried his burden of proof through the first four steps, and demonstrated that he was unable to perform any of his past relevant work. 20 C.F.R. § 404.1565. This court's inquiry is thus limited to whether substantial evidence supports the ALJ's determination at step five of the inquiry--namely, whether substantial evidence supports the ALJ's determination of claimant's RFC, including his claim of a mental impairment,

and the evaluation of the medical opinions. The ALJ reviewed the evidence and concluded that plaintiff had severe impairments of degenerative and discogenic back disorders. (Tr. 43) These conditions did not meet the Listings and plaintiff retained the RFC to perform a limited range of sedentary positions; that he could lift, carry, push or pull up to 10 hours during an 8 hour workday, and sit for 6 hours, walk or stand for 2 hours but cannot climb ladders, ropes, or scaffolds. He could occasionally climb ramps or stairs. He can occasionally balance, stoop, kneel, crouch, and crawl.

The ALJ found that the objective medical studies showed back problems but did not account for plaintiff's symptoms. His nerve conduction study and EMG in July 2007 were normal. His examinations do not suggest peripheral polyneuropathy, mononeuropathy, or radiculopathy. He may have carpal tunnel syndrome but had 5/5 strength in his arms and legs, and his sensation and reflexes in July 2007 were normal. His gait is also normal and he had no limitation on range of motion in his back. There was no increase in pain with movement and negative straight leg raising tests. Paresthesias was noted in his hands and fingers and decreased sensation in his left thigh. (Tr. 44-45) Physicians have recommended that he undertake an exercise program in addition to his pain medication. The July, 2007 MRI showed central disc herniation at T7-8 in the thoracic spine and loss of disc height at these levels. (Tr. 45) An MRI of the brain was unremarkable. In December, 2007 he underwent a permanent spinal cord stimulator placement which improved his condition. He continued on pain medication including Prozac, Valium, Percocet, Imitrex, and Depakote on a daily basis. Plaintiff has not reported any side effects to his doctors.

His allegations to the agency are generally consistent with his allegations to his doctors. (Tr. 45) Plaintiff reports episodes of blurred vision, but objective testing in July 2007 was normal and visual fields were full. (Tr. 45)

The ALJ considered his daily activities as well as the medical source functional assessment from Dr. Perry and were given little weight because they appeared inconsistent with the objective testing. (Tr. 46) The ALJ reviewed the psychological consult and concluded that his mental condition would only mildly impair his ability to perform work related activity. (Tr. 46) The ALJ considered plaintiff's education, skills, medical evidence, and testimony including that of the vocational expert, and concluded that plaintiff could perform the limited range of sedentary work and jobs identified by the VE and found plaintiff not disabled.

**The Medical Evidence**

Much of the medical evidence predates the onset date. The record contains the 2002 examination of plaintiff for disability by Joseph A. Jeney, Ph.D. (Tr. 150-155). The diagnosis was adjustment disorder with depressed mood, pain in the joints, and a GAF of 60. The August 8, 2006 Psychiatric Medical Report was completed by a examiner Carrie Neubecker, and Mathew Dickson, a supervising Psychologist. (Tr. 182) The diagnosis was depressive disorder not otherwise specified, chronic pain, and GAF of 65. Id. The examiners opined that the psychological condition would mildly impair his ability to perform work related functions. Id. Also in August, 2008, reviewer Rom Kriauciunas, Ph.D. opined that "agree [that plaintiff could perform] unskilled work." (Tr. 183) Based on his review, plaintiff has a "depressive disorder NOS." (Tr. 187) Although there are no episodes of decompensation, he believed plaintiff had

mild restrictions of daily living and social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 194) None of the impairments meets the listings. Plaintiff is not significantly limited in any of his mental capacities except for moderate limitations in the ability to understand and remember detailed instructions, carry out such instructions, and maintain attention for a long period of time, and respond appropriately to changes in the work setting. (Tr. 199-200) He concluded that plaintiff "is able to do simple, unskilled work, on a sustained basis." Id.

Medical records which appear to be from Dr. Perry's office are mostly from the time period well before the onset date. They show that plaintiff was seen about once a year or less through April, 2005. (Tr. 159) Plaintiff's lab work of October, 2004 was normal. (Tr. 171) Subsequently, office notes show that he was seen May 5, 2005, May 31, 2005, September 28, 2005, October 26, 2005. (Tr. 162-163) The office was contacted by pharmacies on at least two occasions regarding the amount of pain prescriptions given to plaintiff. In November, 2005, the Target Pharmacy in Flint called to verify the Vicodin ES as he had three refills. Apparently, the physician's office confirmed. Plaintiff was seen January 19, 2006 and possibly February 21, 2006. (Tr. 161) In March, 2006, the doctor's office received another call from a Target Pharmacy regarding pain medication prescriptions from the office filled by plaintiff. The office note indicates that plaintiff had been taking 4-6 Vicodin ES per day, occasional Percocet, and sometimes the two together. Between January 27, 2005 and March 2, 2006, plaintiff had received 1200 Vicodin from Target in Flint and 1080 Percocet from Walgreen's and VG's, a

total of 2280 pills.  The doctor states in the note that he had been prescribing those and although it was slightly more often than had been recommended, it was not excessive. (Tr. 161)

Plaintiff was examined for disability in August 2006 by Dr. Schuchter, MD. (Tr. 202-203) Plaintiff reported previous knee arthroscopic surgeries. He takes Percocet for the last two to three years and "had taken Vicodin in the past and occasionally now." He has asthma but has never been hospitalized because of that.  There was no joint swelling or redness.  He had no lack of coordination.  Light touch and vibration sense were intact.  He was able to perform serial 7s and name the last two presidents. His speech was normal.  Lungs were clear.  There was no liver or ulcer disease.  He has intermittent headaches. Range of motion was essentially normal. (Tr. 204) He could heel and toe walk and had a stable gait. (Tr. 207) The conclusion was probable fibromyalgia/chronic fatigue syndrome; status post knee surgeries and history of bronchial asthma. (Tr. 203)[2]

Plaintiff submitted a form from Dr. Perry dated December 4, 2006 regarding his abilities. (Tr. 217-219) Dr. Perry, whose specialty is family practice, reported that plaintiff could carry less than ten pounds occasionally, the lifting amount for frequent carrying is left blank, and stand less than two hours a day.  He must periodically alternate between standing and sitting and is limited in push/pull with his lower extremities.  The doctor notes that plaintiff experiences pain

---

[2]Ronald Harris is listed as a Medical consultant in the government's brief but a "Notice of Errata" (#10) filed by defendant clarifies that he is not a doctor.  Therefore, reference and reliance by the ALJ to this effect cannot serve as substantial evidence–he is not a medical source–and his opinions will be disregarded. The court does not believe that the Notice of Errata is a sufficient way to address this.  A motion to supplement or clarification in the title of the document should be used to put the court and all parties on notice of this inappropriate reliance by the agency and the ALJ.

in his hands and feet, arms and legs with either prolonged standing/sitting or use of hands. He is also limited in climbing and other postural limitations. (Tr. 218) He also cannot handle extremes of temperatures. (Tr. 219)

Medical records from 2007 show that in July, 2007, plaintiff was seen at the Flint Neurological Center by Dr. Ahmad MD at the request of Dr. Shah. He was found to be in no acute distress. (Tr. 235) His MRI of the thoracic spine shows central disc herniations present at T7-8 and T8-9, effacing the thecal sac and impressing slightly upon the cord. (Tr. 232) MRI of the brain on the same date was unremarkable. (Tr. 233) Higher cortical function and mental status were normal. Id. Strength testing was 5/5. Nerve conduction studies and EMG were unremarkable. (Tr. 237) The impression was suspected carpal tunnel syndrome and it was recommended that he wear a splint at night. He was asked to increase his Lyrica to 150 mg twice a day. The examining physician Dr. Ahmad reported that there is nothing to suggest peripheral polyneuropathy and he would not pursue further testing for neuropathy. (Tr. 236)

Plaintiff was referred by Dr. Shah to Dr. Atty in late August, 2007. The impression was chronic neck and lower back pain, diffuse body pain. (Tr. 239) All diagnostic tests have been negative and complex regional pain syndrome in all four extremities would be very rare. (Tr. 245) Sitting straight leg raising was negative. Sensation was normal. (Tr. 244-245) Dr. Bete also examined plaintiff in consultation with Dr. Atty. It was noted that plaintiff had been told of various diagnoses including fibromyalgia. The impression after examination was chronic neck and lower back pain, and upper and lower extremity diffuse pain. The doctor discussed with plaintiff that management of this pain was not beneficial with narcotic pain medication. Plaintiff

- 11 -

was going to discuss with Dr. Perry a change in medication. (Tr. 245)  A trial of Cymbalta was suggested with a return in four or five weeks. Id.  In September, 2007, Dr. Atty writes to Dr. Shah and reports that plaintiff has improved.  He perhaps has a complex regional pain syndrome or fibromyalgia. (Tr. 239) He was placed on Cymbalta, the Lyrica was decreased, he was to consult a psychologist and a sleep clinic, and increase his home exercise program. (Tr. 240)  In December, 2007, plaintiff had placement of a spinal cord stimulator. (Tr. 227)

In 2008, plaintiff had a sleep study with Dr. George Zurelkat, MD which indicated that he should use a CPAP and follow up sleep specialists. (Tr. 222) This showed normal EKG sinus rhythm, no significant leg movements, mild to moderate snoring, and no other events were seen. There were reported respiratory arousals and sleep efficiency was 63%, which was noted to be poor. (Tr. 224)

Dr. Shah reports that the RSD (reflex sympathetic dystrophy) is the primary diagnosis and it involves the lower limb.  The RSD improved with the stimulator.  He was continued on Cymbalta, Lyrica, Percocet, and Prozac. (Tr. 247-248) Two weeks earlier, Dr. Shah reported that the primary diagnosis was Chronic Pain Syndrome and there was little he could do for him. (Tr. 249-250)   Additional office notes are also included from earlier appointments. (Tr. 255-282) These show the continuing use of Vicodin, Percocet and other drugs.

**Plaintiff's Arguments**

**(1) That the ALJ's Determination of the Residual Functional Capacity (RFC) Was Wrong and the Hypothetical Question to the Vocational Expert Failed to Accurately Portray Plaintiff's Mental Limitations**.

Plaintiff relies on the opinion of the reviewer Rom Kriauciunas who opined that plaintiff had moderate limitations in some areas but could do unskilled work.  The ALJ reasonably relied on the opinion of the <u>examining</u> mental health professionals who opined that plaintiff had only mild impairments in his ability to perform work-related activities.  In addition, other medical examiners found no problems with plaintiff's mental condition; he was able to converse, perform mathematical calculations, and had adequate judgment. It is a concern to the court that plaintiff seems to take an inordinate amount of prescription pain killers which could affect his mental ability, apparently on the directions of Dr. Perry but inconsistent with the recommendations of examining physicians and other treaters, and has taken these for a long period of time. Nevertheless, plaintiff claims no side effects from these and did not allege a mental impairment. The ALJ's finding that his psychological condition would only mildly impair his abilities is supported by substantial evidence.

**(2) That the ALJ Failed to Properly Evaluate the Medical Opinion Evidence.**

The ALJ reasonably gave little weight to the opinion of Dr. Perry, his treating physician. Plaintiff argues that the treating physician's testimony was not given the appropriate weight.  It is true that great deference is to be given to medical opinions and diagnoses of treating  physicians. *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985).  It is also true that complete deference is given when said opinions are uncontradicted.  However, in both instances, the opinion of the treating physician must be based on sufficient medical data. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984); *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir. 1984).  Where the doctor's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with

the doctor's previous opinions, the defendant is not required to credit such opinions. *Villarreal v. HHS*, 818 F.2d 461, 463 (6th Cir. 1987). The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. *Warner v. Commissioner of Social Security*, 375 F.3d 387 (2004) (citing *Harris v. Heckler*, 756 F.2d at 435). Dr. Perry filled out a form which left some questions blank and gave no objective support for the conclusions. The opinion is six months before the alleged onset date and has not only no objective tests but no clinical findings supportive of the opinion. Several specialists thereafter performed multiple studies on plaintiff–these were essentially normal. The MRI showed some nerve impingement and that was taken into account in determining the plaintiff's RFC and the jobs that he could do. However, there is no medical evidence supporting the complaints of disabling pain.

Plaintiff argues that he is unable to work because he experienced pain throughout his body as a result of either Reflex Sympathetic Dystrophy or Chronic Pain Syndrome. As a general proposition in social security cases, courts find that pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. *Houston,* 736 F.2d at 367; *Walters v. Commissioner of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997); *Villarreal v. Secretary of HHS*, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. *Villarreal*, 818 F.2d at 463 and 464.

In *Duncan v. Secretary of HHS*, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. *Jones v. Secretary of HHS*, 945 F.2d 1365, 1369 (6th Cir. 1991).

Here, there is no objectively determined medical condition. The ALJ considered all the medical evidence and determined that claimant could perform unskilled sedentary work which took into account the medical restrictions which were supported. It is the ALJ's place, and not the reviewing court's, to "resolve conflicts in evidence." *Gaffney,* 825 F.2d at 100. Even considering his chronic pain syndrome, reflex sympathetic dystrophy, possible carpal tunnel, or whatever diagnosis he carries, based on review of the record as a whole, the ALJ's RFC determination and finding based on the vocational expert's testimony regarding the significant number of jobs available are supported by substantial evidence. Thus, the decision should be affirmed.

**Conclusion**

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying disability benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                            s/Virginia M. Morgan
                                            Virginia M. Morgan
                                            United States Magistrate Judge

Dated: June 17, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 17, 2010.

                                            s/Jane Johnson
                                            Case Manager to
                                            Magistrate Judge Virginia M. Morgan